Filed 7/9/25  P. v. Naeve CA1/4
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CHRISTOPHER MICHEL NAEVE,<br><br>    Defendant and Appellant. | A170970<br><br>(Marin County Super. Ct.<br>No. CR0000531) |

Christopher Naeve appeals from the trial court's judgment, challenging the court's denial of his request for mental health diversion pursuant to Penal Code section 1001.36.[1]  Naeve was charged with one felony count of criminal contempt of court for violating a protective order, and misdemeanor counts of endangering and battery on an elderly person.  The charges arose from an incident in which Naeve, after consuming alcohol, grabbed his 77-year-old mother's arms and pushed her, causing her to stumble, and then grabbed her wrists.  He argues that the trial court abused its discretion insofar as it concluded that he posed an unreasonable risk to public safety if treated within the community, due to his history of aggression toward and assaults on his mother, his threats to kill her, his past violations of protective

_____

[1] Undesignated statutory references are to the Penal Code.

orders and release conditions, and his alcohol abuse. We find no abuse of discretion in the trial court's denial of diversion and affirm the judgment.

BACKGROUND

## I. Factual History

On August 7, 2023, police officers responded to a report of Naeve's battery on his mother.[2] Naeve was staying at her house and drank alcohol that day. At the time, he was subject to a restraining order that required only peaceful contact between him and his mother. Around 9:00 a.m., Naeve entered her bedroom, grabbed both of her arms near her shoulders, and pushed her, causing her to stumble. He then grabbed her wrists; later that day, officers observed "a scab with visible blood" on her right wrist and a two-inch-long bruise on her left wrist.

Naeve's mother told the officers that she feared Naeve. Recently, he had been threatening her, including telling "her that he dreams of the day [she] wakes up with blood dripping down her throat." Naeve "threatened to hit her and held up [his] fists in a fighting stance." He also "told her he was going to pour soap on her stairs so [she] would fall down the stairs and break her neck." Naeve's mother reported that Naeve "only acts that way after drinking."

On August 11, officers checked in with Naeve's mother, who still had bruising to her left hand and her right wrist. On the morning of the battery, Naeve's mother reported, Naeve had "told her, 'Don't be surprised if you wake

---

[2] Because Naeve pled guilty before preliminary hearing and trial, our account of the crimes is derived from the probation report. Mindful that the probation report is presumptively confidential after 60 days from the date of entry of judgment or the date probation is granted, whichever is earlier, we repeat here only the information that the parties disclosed in their briefing. (*People v. Williams* (2021) 63 Cal.App.5th 990, 996, fn. 9.)

up and there's blood on your neck.' " Naeve spat in her face and told her that she had lived too long.

When probation contacted Naeve's mother in May 2024, she said she believed that Naeve needed to be locked in a mental health facility. She reported that Naeve "ha[d] threatened to kill her numerous times and has had a machete in the past. . . . [S]he is the trustee of a trust . . . [and Naeve feels] entitled to [the] trust and . . . would kill her to gain access to the trust money." Naeve's mother "did not want to be [Naeve's] 'punching bag,' " and did not trust Naeve, who, she said, "ha[d] never stayed with a program while on probation." Naeve had changed after a brain injury and although she wished him well, Naeve's mother "ha[d] to think of her welfare and believe[d] her life could be in danger if [Naeve] [wa]s released." She stated that Naeve "had previously told her he would chop her head off and bury [her] in a shallow grave."

## II. Procedural History

Naeve moved in the trial court for mental health diversion. In opposition, the prosecution presented evidence of Naeve's history of violence perpetrated against his mother, starting in 2020. In an incident that year, Naeve grabbed his mother's arm, slammed her against a door, and broke a chair. In 2021, Naeve was living with his mother in violation of a protective order. On one occasion, he placed a machete at her throat and threatened to kill her. "[W]hen she tried to protect herself, he cut her hand with th[e] machete." He said that "he could chop off her neck, and . . . throw her head into the creek, and could chop up her body and . . . bury it." Later in 2021, Naeve "threatened her again with a knife. He said, we can get this over with right now, I can just snap you." Naeve's mother believed the threats were genuine. Naeve had also punched and slapped her in the face and grabbed

3

her hand, breaking the skin. "[T]hen he held a knife to her throat again and said, this is it, this is your last day."

At the preliminary hearing arising from Naeve's 2020 and 2021 conduct, Naeve's mother had testified that he "threatened to smash her brains in with a rock, that he wanted to beat the [shit] out of her. That he could put something slippery on the top of the stairs, so she could fall down and break her neck." At sentencing on those charges, the prosecutor became "so concerned that [Naeve] was being dismissive . . . about the protective order that [he] called . . . for extra patrols at [the mother's] house. And, sure enough, [Naeve] walked straight from [the court] . . . to her house in violation of a ten-year protective order . . . ."

Naeve was under community supervision when he committed the crimes at issue in this case. The prosecutor argued that Naeve's history, coupled with the facts of this case, supported a finding that Naeve was likely to kill his mother. The risk to public safety was particularly grave because, the prosecutor said, Naeve "has been targeting the same victim for three or four years . . . and has actually injured [her] and threatened [her] with death." In response, Naeve's counsel acknowledged Naeve's history with his mother, but emphasized that his prior crimes were almost all misdemeanors. Counsel acknowledged Naeve's alcohol abuse but explained that "nothing [Naeve] has done has amounted to a super strike" and nothing indicated he was "going to make that leap to" super-strike conduct.

The court denied Naeve's motion, explaining that "in essence I'm being asked to again place defendant's mom's health potentially at risk." Naeve had violated protective orders and threatened to kill his mother, and because diversion would be "less restrictive or less supervision than probation," the court had "concerns that [Naeve] poses an unreasonable risk to his mom,

4

because when he's been placed on probation with more strict limitations and structures, he's not done well, and there's no reason to believe . . . that . . . on diversion where the support is less, that it would do anything different. If anything, . . . it would encourage this behavior, so I don't think he's a suitable candidate. I do think he poses an unreasonable safety risk to his mom." After further argument, the court emphasized that the history of Naeve's behavior toward his mother meant diversion was too risky.

Naeve moved for reconsideration. The court explained that the psychologist who examined Naeve opined that Naeve "does not pose an unreasonable risk of danger to public safety if . . . he avoids triggering situations, namely conflict with his mom. That . . . statement is concerning to me because it suggests to me that if Mr. Naeve fails to avoid conflict with his mom, then he does pose a danger to her. And . . . I looked back at his prior case . . . . [I]n that case, [he] was sent to state prison for placing a knife against the throat of his mom and threatening to kill her saying something like, 'This is it. This is your last day.' . . .

"Prior to sentencing in that case, the victim texted the Court and the prosecutor's office saying, . . . 'Please keep the ten-year restraining order. My life will be in danger if he's out and about. He has made my life terrible. He wants me dead. He has tried two times with a knife and told me ten ways he could kill me, eat my brains, as an example. Please keep him in a controlled area. Please keep him away from me. I don't [want] anything more to do with him for a very long time. He has told me that I have lived too long and [he] wants me dead.' . . . He received a prison term and then was placed on PRCS with terms, including that he ha[ve] no contact with his mother. And as we know from the doctor . . . conflict with his mother is a triggering event [and], as she describes in her report, '[Naeve] . . . sometimes

5

reacts inappropriately to these triggering events.' While on PRCS, he violated the criminal protective order on several occasions[,] which means that keeping him from contact and/or potential conflict with his mom is challenging and he doesn't abide by the protective order.

"In the new case, [Naeve's] mom indicated that [he] had been threatening her, told her that he dreams of the day she wakes up with blood dripping down her throat. He threatened to hit her and was holding his fists up in a fighting stance and he told her he was going to pour soap on the stairs so that she would fall down and break her neck. . . . [T]he victim indicated that [Naeve] oftentimes behaves poorly when he's consuming alcohol. Alcohol avoidance has been a term of probation and PRCS, which [Naeve] has been unable to maintain. The [psychologist] said that maintaining abstinence is very important as well, which he's had difficulty complying with."

The court denied the request, explaining that if Naeve could not "stay away from his mom and [is] unable to avoid conflict with her, she's in danger. And in light of his verbal threats and the fact that he placed a knife to her throat previously, I am worried that if he's placed on mental health diversion, that he poses an unreasonable risk of murdering her."

Naeve pled guilty and was sentenced. He sought a certificate of probable cause to challenge the trial court's denial of his request for diversion, which the court granted.

## DISCUSSION

### I. Standard of Review

"We review the trial court's denial of mental health diversion for abuse of discretion." (*People v. Pacheco* (2022) 75 Cal.App.5th 207, 213 (*Pacheco*).) A court abuses its discretion by making an arbitrary or capricious determination that " ' " 'exceeds the bounds of reason' " ' " (*ibid.*), or if its

6

factual findings are not supported by substantial evidence. (*Lacour v. Superior Court* (2025) 110 Cal.App.5th 391, 401.)

## II.     Diversion

Mental health diversion pursuant to section 1001.36 "allows for the suspension of criminal proceedings and potential dismissal of charges upon successful completion of mental health treatment." (*Sarmiento v. Superior Court* (2024) 98 Cal.App.5th 882, 890 (*Sarmiento*).) "By its terms, section 1001.36 was designed to encourage trial courts to broadly authorize pretrial mental health diversion, providing treatment for qualifying mental disorders that result in criminal behavior." (*Id.* at p. 887.)

Section 1001.36, subdivision (a) authorizes trial courts to order diversion "if the defendant satisfies the eligibility requirements . . . set forth in subdivision (b) and . . . is suitable for . . . diversion under the factors set forth in subdivision (c)." The parties agree that the central issue here is Naeve's suitability for mental health diversion under subdivision (c). Specifically, the parties address the requisite finding under subdivision (c)(4) that "[t]he defendant will not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community." (§ 1001.36, subd. (c)(4).) In turn, section 1170.18, subdivision (c) defines an " 'unreasonable risk of danger to public safety' " as an "unreasonable risk that the [defendant] will commit a new violent felony within the meaning of" section 667, subdivision (e)(2)(C)(iv). Those violent felonies are called "super strikes" and include "[a]ny homicide offense, including any attempted homicide offense." (§ 667, subd. (e)(2)(C)(iv)(IV).)

Pursuant to the trial court's "residual" discretion, "even where defendants make a prima facie showing that they meet all the express statutory requirements, the court may still exercise its discretion to deny

diversion." (*Sarmiento, supra*, 98 Cal.App.5th at p. 892.) Such discretion "must be exercised ' "consistent with the principles and purpose of the governing law," ' " including "a strong legislative preference for treatment of mental health disorders because of the benefits of such treatment to both the offending individual and the community. Where the court chooses to exercise this residual discretion to deny diversion, its statement of reasons should reflect consideration of the underlying purposes of the statute and explain why diversion would not meet those goals." (*Id.* at pp. 892–893.) The statute's purpose "is to keep people with mental disorders from entering and reentering the criminal justice system while protecting public safety . . . ." (*People v. Whitmill* (2022) 86 Cal.App.5th 1138, 1149.) In assessing the risk to public safety, the court must determine whether the defendant is "likely to commit a super-strike offense." (*Sarmiento*, at p. 897.)

Here, the trial court concluded that given Naeve's history of threats and violence against his mother, his repeated violations of protective orders and release conditions, and his alcohol abuse, it could not assume that Naeve would avoid triggering events—namely, contact and conflict with his mother—as the psychologist indicated was necessary to protect the public. Although it is true that most of Naeve's criminal conduct resulted only in misdemeanor convictions and he had not seriously harmed his mother, the court specifically noted the instance in which Naeve held a knife to her throat while threatening to kill her. Record evidence indicated that he had also cut her hand with a knife, and hit and pushed her, causing bruises and cuts. Naeve's mother stated he had tried to kill her twice with a machete and she believed his threats to kill her were genuine. The court emphasized that Naeve had not successfully complied with court orders, indicating a greater risk if he were granted diversion and released with less restrictive conditions.

The court's concerns were consistent with those expressed by the probation officer.

"[B]y requiring the trial court to evaluate the 'risk' posed to public safety" as part of its assessment of suitability for mental health diversion, "the statutory language directs the court to perform a quintessential discretionary function." (*People v. Moine* (2021) 62 Cal.App.5th 440, 448.) Here, the court reasonably exercised its discretion to find an unreasonable risk that Naeve would commit a super strike offense—namely, murder—if released to the community, and substantial evidence supports that finding.

Naeve compares this case to *Sarmiento*, *Pacheco*, and *People v. Brown* (2024) 101 Cal.App.5th 113 (*Brown*), arguing that even if the court reasonably believed that he posed a risk to his mother, there was not sufficient evidence to conclude that he posed a risk of *murdering* her, as required to satisfy section 1001.36, subdivision (c)(4). He argues that his recent conduct "involves far less violence and menace" than his crimes in 2021 and notwithstanding his frequent threats to harm or kill his mother, he has inflicted only "minor injuries" on her. Consequently, he argues, the trial court's denial of his request for diversion contravenes the legislative intent underlying section 1001.36.

While the record does not show that Naeve inflicted great bodily injury on his mother, or that, despite all his (often descriptive) threats to kill her, he actually followed those threats through to completion, the cases he cites do not indicate that it was arbitrary or capricious for the court to conclude that he posed an unreasonable risk of murdering her, or at least attempting to do so. The defendant in *Sarmiento* was unarmed when she passed "a note written in lipstick on a napkin" to a liquor store clerk, asking the clerk for "the money." (*Sarmiento*, *supra*, 98 Cal.App.5th at p. 886.) And in that case,

9

the trial court failed entirely to find that the defendant would commit a future super strike offense.  (*Id.* at pp. 895–897.)  By contrast, there is far more violence in Naeve's criminal history, and he has inflicted that violence on his mother, made many graphic threats to kill her, and has not adhered to court-ordered limitations on his conduct.  Relying on this evidence, the court explicitly found that he was likely to commit murder.

The case at bar shares certain material characteristics with *Pacheco* and *Brown*, where the courts affirmed in relevant part the trial courts' denials of the defendants' requests for diversion.  (*Pacheco, supra*, 75 Cal.App.5th at p. 214; *Brown, supra*, 101 Cal.App.5th at pp. 121–122.)  In *Pacheco*, the court concluded, based on an evaluating mental health professional's opinion, that it was unlikely the defendant would abstain from abusing controlled substances, contrary to his well-established history, and to take his psychotropic medications consistently, and therefore that the circumstances essential to preventing him from committing a future violent crime were unlikely to occur.  (*Pacheco*, at pp. 213–214.)  The same was true in *Brown*, both with respect to his alcohol abuse and his medications.  (*Brown*, at pp. 118, 124.)  And both the defendants in *Pacheco* and *Brown*— like Naeve, but unlike the defendant in *Sarmiento*—requested mental health diversion in lieu of prosecution on charges of violent crimes.  (*Pacheco*, at p. 209; *Brown*, at p. 116.)  These cases do not establish that the trial court abused its discretion in denying Naeve's request for mental health diversion.

## DISPOSITION

The judgment is affirmed.

GOLDMAN, J.

WE CONCUR:

BROWN, P. J.

10

STREETER, J.